IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

STEVEN E. WANBAUGH                                                                                    PLAINTIFF

v.                                  Civil No. 05-5214

OFFICER FIELDS, Fayetteville
Police Department; and OFFICER
FAUGHT, Fayetteville Police Department                                                        DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

The plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds pro se and in forma pauperis.

The events at issue in this lawsuit occurred on November 25, 2005. Plaintiff maintains his constitutional rights were violated when excessive force was used against him during his arrest.

Defendants filed a summary judgment motion (Doc. 12). To assist plaintiff in responding to the summary judgment motion, a questionnaire was propounded (Doc. 15).

Plaintiff filed a timely response to the questionnaire was filed (Doc. 16). The summary judgment motion is before the undersigned for issuance of this report and recommendation.

### Background

On November 25, 2005, Wanbaugh was driving a Ford pick-up truck on Razorback Road in Fayetteville, Arkansas. *Plaintiff's Response* (Doc. 16)(*hereinafter Resp.*) at ¶ 1. Justin Baker was a passenger in the vehicle. *Id.* at ¶ 14.

AO72A
(Rev. 8/82)

Officer Robin Fields, of the Fayetteville Police Department, was traveling North on Razorback Road when he observed Wanbaugh make an illegal turn. *Id.* at ¶ 2. Fields turned on the lights of his patrol car and pulled Wanbaugh over. *Id.* at ¶ 3(A).

Officer Travis Faught responded to the traffic stop to assist Fields and approached the passenger's side of the truck. *Resp.* at ¶ 3(B). Fields repeatedly advised Wanbaugh to remain in his truck. *Id.* at ¶ 4. According to Fields, Wanbaugh repeatedly disobeyed his commands and on several occasions opened his door and started to step out of his truck. *Id.* at ¶ 5. According to Wanbaugh, this only happened once. *Id.*

When Fields approached the truck Wanbaugh was driving, he observed Wanbaugh and a passenger and both Wanbaugh and the passenger appeared nervous. *Resp.* at ¶ 6(A). Faught asserts he also noticed Wanbaugh was nervous. *Defendants' Exhibit* B at ¶ 2. Faught noted Wanbaugh bouncing both his legs uneasily and his hands were visibly shaking. *Id.* Wanbaugh denies that his hands were shaking. *Resp.* at ¶ 6(B).

Fields asserts he explained why he made the traffic stop and asked Wanbaugh to provide his driver's license, registration, and insurance. *Defts' Ex.* A at ¶ 3. Wanbaugh indicates Fields did not at this time explain why he had made the traffic stop. *Resp.* at ¶ 7.

Wanbaugh indicated he was not the owner of the truck. *Resp.* at ¶ 8. According to Fields, Wanbaugh avoided Fields' repeated requests for Wanbaugh's driver's license. *Defts' Ex.* A at ¶ 4. However, Wanbaugh asserts he told Fields that he did not have his driver's license with him. *Resp.* at ¶ 8.

Wanbaugh provided Fields with his name and date of birth and Fields returned to his patrol car to run warrant and driver's license checks. *Resp.* at ¶ 10. According to Fields,

Wanbaugh attempted again to get out of the truck. *Defts' Ex.* A at ¶ 5. Fields instructed Wanbaugh to remain in the truck. *Resp.* at ¶ 12.

When Fields returned to the truck, he states Wanbaugh admitted he had lied and said he was driving on a suspended driver's license. *Defts' Ex.* A at ¶ 5. Wanbaugh, however, states he told Fields he suspected his driver's license was suspended. *Resp.* at ¶ 13.

Central Dispatch informed Fields that there was a felony warrant for Wanbaugh's arrest in Benton County. *Defts' Ex.* A at ¶ 6; *Defts' Ex.* B at ¶ 3. Fields returned to the truck and spoke with Wanbaugh. *Resp.* at ¶ 16. He gave Fields permission to conduct a search of the truck. *Id.*

After learning that the felony warrant was valid, Fields approached Wanbaugh at the back of the truck and informed him of the existence of the warrant. *Resp.* at ¶ 17. According to defendants, Wanbaugh immediately became belligerent and began yelling that he was not going back and began struggling to get away. *Defts' Ex.* A at ¶ 8; *Defts' Ex.* B at ¶ 5. Wanbaugh states he did not get belligerent. *Resp.* at ¶ 18. Instead, he states he simply said he did not want to be handcuffed. *Id.*

According to Fields, after Wanbaugh continued to struggle despite Fields' orders for him to stop resisting, Fields told Wanbaugh a stun gun would be used if he did not stop resisting. *Defts' Ex.* A at ¶ 8. Wanbaugh states Fields did not tell him anything. *Resp.* at ¶ 19(A). Instead, according to Wanbaugh, Fields merely told Faught to get the taser and "taze the s.o.b." *Id.*

Wanbaugh yelled go ahead and tase me. *Resp.* at ¶ 19(B). Defendants maintain Wanbaugh refused to put his hands behind his back and continued to resist. *Defts' Ex.* A at ¶ 8; *Defts' Ex.* B at ¶ 5. Wanbaugh states he put both hands behind his back after the first time the taser was used.

AO72A
(Rev. 8/82)

*Resp.* at ¶ 20. When he was tased again, Wanbaugh states his right arm inadvertently sprang straight. *Id.*

Faught maintains he attempted to deploy his stun gun so that they could arrest Wanbaugh without further struggle. *Defts' Ex.* A at ¶ 9; *Defts' Ex.* B at ¶ 6. Based on Wanbaugh's continued attempts to resist arrest despite their demands that he stop, Faught felt that his own safety and that of Fields was at risk. *Defts' Ex.* B at ¶ 6. Defendants assert the stun gun did not deploy and Wanbaugh took off running in an attempt to flee. *Defts' Ex.* A at ¶ 9; *Defts' Ex.* B at ¶ 7.

Wanbaugh ran around the truck and a utility truck and ignored Faught's commands to stop running and get on the ground. *Defts' Ex.* B at ¶ 7. After a brief chase, Fields was able to grab hold of Wanbaugh. *Defts' Ex.* A at ¶ 10.

According to defendants, Wanbaugh began swinging at Fields and striking Fields. *Defts' Ex.* A at ¶ 10; *Defts' Ex.* B at ¶ 8. Defendants indicate Fields was able to take Wanbaugh to the ground but he continued swinging and kicking wildly. *Id.* Wanbaugh asserts he never raised a hand or a foot at Fields. *Resp.* at ¶ 24 & ¶ 25.

Faught maintains he tased Wanbaugh for the safety of Fields and himself. *Defts' Ex.* A at ¶ 10; *Defts' Ex.* B at ¶ 8. According to defendants, Wanbaugh continued to struggle so Faught re-deployed the stun gun a minimal amount of times until Wanbaugh allowed the officers to handcuff him. *Defts' Ex.* A at ¶ 10; *Defts' Ex.* B at ¶ 8. Wanbaugh, however asserts he quit resisting after the taser was deployed the first time. *Resp.* at ¶ 27 & ¶ 28.

Defendants assert that as they attempted to walk Wanbaugh towards the patrol car, he jerked from side to side and continued kicking. *Defts' Ex.* A at ¶ 11; *Defts' Ex.* B at ¶ 9. Once

they arrived at the patrol car, defendants maintain Wanbaugh refused to get into the car yelling: "I am not going back." *Id*. Defendants assert Faught was forced to deploy the stun gun once so that they could safely place Wanbaugh into the patrol car. *Id*.

According to Wanbaugh, he obeyed the defendants and followed their orders. *Resp.* at ¶ 29. Wanbaugh also denies that he refused to get in the patrol car or yelled that he wasn't going back. *Id*. at ¶ 30. With respect to Faught having to deploy the stun gun to get him into the car, Wanbaugh states Faught did this for spite. *Id*. at ¶ 31. Wanbaugh also states Faught called him an s.o.b. *Id*.

Once in the patrol car, defendants maintain Wanbaugh continued screaming and attempted to kick out the back window of the car. *Defts' Ex*. A at ¶ 12; *Defts' Ex*. B at ¶ 9. Wanbaugh asserts he sat in pain from being tased multiple times and cried. *Resp.* at ¶ 32.

Faught transported Wanbaugh to the Washington County Jail. *Resp.* at ¶ 33(A). Wanbaugh was booked in and charged with second degree battery on an officer, resisting arrest, fleeing, and destruction of government property. *Defts' Ex*. B at ¶ 10.

With respect to the battery charge, we note that neither defendant contend they were physically injured by the plaintiff. Rather, Fields only asserts that the shoulder strap of his uniform was torn.

According to Fields, Wanbaugh tore his shoulder strap off his uniform and broke his department issued pager. *Defts' Ex*. A at ¶ 13. Wanbaugh contends Fields tased him multiple times and hit him in the face after he was handcuffed. *Resp.* at ¶ 36. Wanbaugh also contends Faught tased him multiple times unnecessarily including one time after he was handcuffed and in the patrol car. *Resp.* at ¶ 37 & ¶ 38.

Wanbaugh maintains he sustained burn marks on him neck and suffered pain in every joint as a result. *Resp.* at ¶ 39. He could barely walk for eight to ten days. *Id.* It took about eight to ten days for him to recover. *Id.* He received no medical attention. *Id.*

On June 22nd, Wanbaugh appeared in Washington County Circuit Court and entered a plea of guilty to second degree battery of an officer, a felony. *Resp.* at ¶ 40. Wanbaugh received a forty-eight month sentence. *Id.* at ¶ 42.

Wanbaugh maintains he was told this charge was brought because the officer got hurt while attempting to arrest him. *Resp.* at ¶ 41. He maintains he never used physical force and gave in after the taser was used against him the first time. *Id.*

### Summary Judgment Standard

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case

AO72A
(Rev. 8/82)

founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

**Discussion**

Defendants have now moved for summary judgment. Defendants contend they are entitled to qualified immunity. First, they contend they did not violate a constitutional right of the plaintiff. In this regard, they contend an officer's use of a stun gun is not objectively unreasonable especially in situations where a plaintiff is resisting arrest. Even if the court finds that a constitutional right of the plaintiff was violated, they contend they did not know their conduct was unlawful.

"Qualified immunity is a defense available to government officials who can prove that their conduct did 'not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Carroll v. Pfeffer*, 262 F.3d 847, 849 (8th Cir. 2001)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534, 537, 116 L. Ed. 2d 589 (1991)(*quoting, Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)). The inquiry is normally one of pure law. *J.H.H. v. O'Hara*, 878 F.2d 240 (8th Cir. 1989).

"The determination of whether a state actor is entitled to the protection of qualified immunity is a two-step process." *Washington v. Normandy Fire Protection Dist.*, 272 F.3d 522, 526 (8th Cir. 2001). The first step is to determine whether, viewing the facts in the light most favorable to the plaintiff, the officers' conduct violated a constitutional right." *Samuelson v. City of New Ulm*, 455 F.3d 871, 875 (8th Cir. 2006). *See also Saucier v. Katz*, 533 U.S. 194, 121 S. Ct.

2151, 2156, 150 L. Ed. 2d 272 (2001). Second, "[i]f a constitutional right has been violated, we must then determine if such right was clearly established." *Samuelson*, 455 F.3d at 875 (citation omitted). "This second step is a fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (internal quotation marks and citations omitted).

Wanbaugh contends defendants violated his constitutional right to be free from excessive force during the course of his arrest. "All claims that law enforcement officers have used excessive force in the course of an arrest or investigatory stop of a free citizen should be analyzed under the reasonableness standard of the Fourth Amendment." *Winters v. Adams*, 254 F.3d 758, 764 (8th Cir. 2001)(citation omitted). *See also, Henderson v. Munn*, 439 F.3d 497, 502 (8th Cir. 2006).

"Police officers are liable for the use of excessive force when they use force that is not objectively reasonable in light of the facts and circumstances confronting them." *Goff v. Bise*, 173 F.3d 1068, 1073 (8th Cir. 1999)(citations omitted). In *Lawson v. Hulm*, 223 F.3d 831 (8th Cir. 2000), the court stated:

> Although there can be no question that the Fourth Amendment prohibits unreasonable seizures of the person, it is also well established that "not every push or shove violates the Fourth Amendment. The applicable test is "whether the force used to effect a particular seizure is reasonable." In the context of a claim of excessive force, the "reasonableness" inquiry must be an objective one in that the court must only evaluate "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."
>
> The "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make judgments--in circumstances that

are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation."

*Lawson*, 223 F.3d at 834 (citations omitted).

The use of some force by police is reasonable when an arrestee flees, resists arrest, or disobeys orders. *See e.g., Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990). The lack of injury or a minor degree of injury is also relevant in determining whether the force used was excessive. *Id.* Additionally, the court may consider whether any injury suffered is explained by the arrestee's own actions. *See e.g., Greiner v. City of Champlin*, 27 F.3d 1346, 1355 (8th Cir. 1994).

With respect to the use of a taser gun, it has been noted that:

> Although being struck by a taser gun is an unpleasant experience, the amount of force Reynolds used-a single use of the taser gun causing a one-time shocking-was reasonably proportionate to the need for force and did not inflict any serious injury. Indeed, the police video shows that Draper was standing up, handcuffed, and coherent shortly after the taser gun stunned and calmed him. The single use of the taser gun may well have prevented a physical struggle and serious harm to either Draper or Reynolds.

*Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004). *See also Hinton v. City of Elmwood, Kansas*, 997 F.2d 774, 781 (10th Cir. 1993)(not excessive force when use of stun gun ceased once individual who was resisting arrest was successfully handcuffed).

In this case, the summary judgment record consists of the affidavits of the defendants, the judgment showing Wanbaugh was convicted of one count of battery of an officer, and plaintiff's summary judgment response that is sworn to under penalty of perjury. Defendants have provided the court with no information with respect to how the resisting arrest and fleeing charges were disposed of and plaintiff states he does not know what happened to these charges. *Resp.* at ¶ 44.

-9-

The parties provide contradictory versions of what occurred during Wanbaugh's arrest. Defendants maintain the plaintiff was agitated, repeatedly refused to comply with their orders, and actively and openly resisted arrest. In light of the fact that Wanbaugh was resisting arrest and struggling, defendants contend there was nothing excessive about their deploying the stun gun a "minimal number" of times until they could safely place him into the patrol car.

In contrast, Wanbaugh maintains he quit resisting in anyway and put both hands behind his back after the first time the taser was used. *Resp.* at ¶ 20. He does state that when he was tased again his right arm did inadvertently spring straight. *Id.* However, he indicates he did not attempt to kick or hit the defendants and did not continue to resist after being handcuffed. *Id.* at ¶ 24 & ¶ 28.

At the summary judgment stage, we must view the evidence in the light most favorable to the nonmoving party. *See e.g., Henderson,* 439 F. 3d at 503. As noted above, Wanbaugh denies that he resisted arrest in anyway after the stun gun was deployed the first time. The offenses with which Wanbaugh was charged, battery on a officer, resisting arrest, fleeing, and destruction of government property, are of negligible severity and while they justify the use of some amount of force do not necessarily justify the amount of force alleged to have been used by Wanbaugh. Based on this evidence, we believe a genuine issue of material fact exists concerning whether the amount of force used in restraining Wanbaugh and the amount of force used after he was restrained was excessive. *See e.g., King v. Shoar*, No. 3:06-cv-61, 2007 WL 2066171 (M.D. Fla. July 13, 2007)("While the use of a taser is not per se excessive force, . . . it may be unnecessary, and therefore unreasonable, for an officer to use force if a suspect if already secured. On consideration of the evidence presented, the Court finds that there is an issue of fact

AO72A
(Rev. 8/82)

as to whether King was already handcuffed before the taser was applied"). *Cf. Henderson v. Munn*, 439 F.3d 497, 502-03 (8th Cir. 2006)(upholding the denial of summary judgment based on an arrestee's evidence regarding the use of pepper spray while he was under control).

As noted above, the second inquiry is whether the right is clearly established. Defendants maintain even if threshold question is resolved, for purposes of this motion in Wanbaugh's favor, they are nevertheless entitled to summary judgment because they were not on notice that their conduct would be clearly unlawful.

"In other words, if the officers' mistake as to what conduct the law required is reasonable, they are entitled to the immunity defense. *Kuha v. City of Minnetonka*, 365 F.3d 590, 602 (8th Cir. 2003)(citation omitted). "Defendants will not be immune, however, if on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant should have taken the disputed action." *Id.*

"[T]he right to be from excessive force in the context of an arrest is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures." *Henderson*, 439 F.3d at 503. In this case, Wanbaugh maintains the taser or stun gun was deployed multiple times after he quit resisting and was handcuffed. Defendants do not indicate the precise number of times they deployed stun gun stating only that it was deployed a "minimal number" of times. However, even under defendants' version of the events of that day, the stun gun was deployed at least one time after Wanbaugh was handcuffed. *See e.g., Hickey v. Reeder*, 12 F.3d 754, 757 (8th Cir. 1993)(Eighth Amendment case--noting testimony revealed a stun gun inflicts a painful and frightening blow, which temporarily paralyzes the large muscles of the body, rendering the victim helpless). There were two officers present, there is no indication Wanbaugh was armed

-11-

or circumstances were volatile or deadly.  We find defendants not entitled to qualified immunity. We believe the state of the law gave the officers fair warning that the alleged repeated deployment of a stun gun on an unarmed arrestee, including one time after he was handcuffed, was unconstitutional.  *See e.g., Roberts v. Manigold,* No. 06-2039, 2007 WL 1732903 (6th Cir. June 14, 2007)("Roberts claims Stricklen needlessly used an electroshock weapon on him. Though the events Roberts described took place over a very short period of time, a reasonable jury could find that Stricklen used unnecessary (and thus excessive) force in violation of Roberts's clearly established Four Amendment right").

### Conclusion

For the reasons stated, I recommend that the defendants' motion for summary judgment (Doc. 12) be denied.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 1st day of August 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)